## JONES v JONES et

Ohio Appeals, 2nd Dist, Franklin Co

No 2266. Decided June 26, 1933

J. I. Boulger, Columbus, and David Peiros, Columbus, for plaintiff in error.

Frank M. Raymond, Columbus, and Hugh Huntington, Columbus, for defendants in error.

## OPINION

### By BARNES. J.

It is the claim of plaintiff Clarence M. Jones that Laura E. Hanna (nee Jones) held a defeasible fee in the premises, subject to be divested on condition that she die without issue, and that having died without issue the fee now vests by executory devise to the plaintiff Clarence M. Jones and Ellis O. Jones II, share and share alike.

Defendants contend that the said Laura E. Hanna (nee Jones) held a fee simple title to the premises at the time of her death, and having devised such premises to the defendants, the plaintiff has no interest therein.

The case is submitted on an agreed statement of facts which contains, among other things, a copy of the will of Ellis O. Jones I. The agreed statement of facts, including the will, is so familiar to counsel that it will not be necessary to quote in full from either, but we will content ourselves with general references to such parts as are germane and such quotations as may be necessary to render our conclusions understandable.

The determination of the question necessarily involves a construction of Item 20 of the will of Ellis O. Jones I, which reads as follows:

"Twentieth: Should either of my said sons Clarence or Ellis Oliver, or my daughter, die without issue, the share of the one dying shall go to the others, share and share alike, or their heirs."

It is admitted in the agreed statement of facts that the language, "or my daughter" referred to Laura E. Hanna (nee Jones), the only surviving daughter of the testator Ellis O. Jones I.

This language standing alone would unquestionably give to the three children a determinable fee subject to be divested by the death of either at any time without issue.

This announcement is very clearly set forth in the case of **Briggs v Hopkins, Exr., et, 103 Oh St, 321,** the syllabus reading as follows:

"Where there is a devise or bequest to one coupled with the provision that if he die without issue such property shall go to another, the words 'die without issue' are to be interpreted as referring to the time of the death of the first taker, unless a contrary intention and purpose of the testator is clearly manifested."

A long list of cases is cited in the opinion, starting with **Parish's Heirs v Ferris, 6 Oh St, 563,** and show this rule to be thoroughly established.

The last announcement of the rule is the very recent case of **The Ohio National Bank v Harris et, 126 Oh St, 360.**

It will be noted that the rule is qualified by this language, "unless a contrary intention and purpose of the testator is clearly manifested."

This necessarily requires an examination of the entire will to ascertain, if possible, the purpose and intent of the testator.

This leads us at once to the dispositive provisions of the will in favor of the three children named, being Items 6, 8, 9, 21 and 22, quoted in full:

"Sixth: I give and bequeath to my son, Clarence M. Jones, the sum of Thirty Thousand ($30,000.00) dollars, the same to be paid to him within two years from the date of my death, without interest."

"Eighth: I give, devise and bequeath to my son, Ellis Oliver Jones, when he shall arrive at the age of twenty four years (24) the sum of ten thousand ($10,000.00) dollars, and when he arrives at the age cf twenty six (26) years, the sum of ten thousand ($10,000.) additional. And it is my will, and I so direct, that from the date of his majority, provided, however. I die before he reaches his majority, until the said two sums are paid to him respectively, he is to be paid the interest accruing from the said sums; and if I survive the date of his majority, then from the date of my death.

"Ninth: I give, devise and bequeath to my daughter, Laura E. Jones, and to her heirs when she shall arrive at the age of twenty two (22) years; my two brick store buildings, known as 229 and 231 North High Street, Columbus, Ohio, the same being a perpetual leasehold, and which I value at the sum of sixty thousand ($60,000) dollars. I also give, devise and bequeath to my said daughter the sum of ten thousand ($10,000) dollars in cash, the same to be paid to her when she shall reach the age of twenty two (22) years, to be invested by her in improved real estate for her sole use and benefit forever.

"Twenty-first: It is my will and I so direct that when my daughter Laura arrives at the age of twenty two (22) years, being the year, 1898, and provided it is not less than one year after my death, a distribution shall be made of my estate, except as to my said son Raymond and my mother; first, by setting aside the sum of sixty thousand ($60,000.00) dollars in good interest paying securities, or good improved real estate, whichever my wife may prefer, the income of which to be hers for her sole use and benefit during her natural life, and to be controlled or managed by her or by her direction; this said sum of sixty thousand ($60,000) dollars to be in addition to that given her in previous sections of this will. And at the death of my wife, it is my will and I so direct, that what remains of said money and property so given her as aforesaid herein, shall be divided between my children, Clarence M. Jones, Ellis Oliver Jones and Laura E. Jones, and their heirs forever, share and share alike.

"Twenty-second: It is my will and I so direct that all the residue of my estate after paying the legacies and bequests heretofore made, be divided among my three children, Clarence M. Jones, Ellis Oliver Jones and Laura E. Jones, so that the share of each of my said three children in my estate shall be equal, except in this, that it is my intention that my son Clarence M. Jones shall have the sum of ten thousand ($10,000) dollars more than my son Ellis Oliver, in consideration of his services to me during my lifetime, and that my daughter, Laura, shall also receive the sum of ten thousand ($10,000) dollars more than my said son Ellis Oliver."

At this point it is proper to have in mind that so far as this case is concerned the real estate under Item 9, and Laura's interest in the residuum under Item 22 are the only properties involved in this action. The $10,000.00 cash referred to in Item 9 is not involved. The $60,000.00 worth of property referred to in Item 21 was divided after the death of the widow of Ellis O. Jones I, and no part of the premises therein referred to is involved in this action. At this time it might be proper to note that following the death of the widow of Ellis O. Jones I, the three children and devisees of the remainder had litigation in which the same question was under consideration as in the instant case. In that case Clarence M. Jones, the plaintiff in this case, and Ellis Oliver Jones, the defendant in this case, took directly opposite positions to that which they are now urging. The trial court in that case held to the view that the language used in Item 20 under the manifest intention and purpose of the testator referred to the death of the children named before his death. The case was carried to the Court of Appeals and before decision, a settlement agreement was entered into and the case dismissed. It is urged in this case that since the court had under consideration the construction of this same clause of the will, that the question now becomes res adjudicata, and the plaintiff is estopped to now urge a contrary construction. In view of the fact that, that case dealt only with the property referred to in Item 21 the plaintiff would not be estopped under the principle of res adjudicata.

It will be noted that Items 20, 21 and 22 in creating the estates by executory devise or by remainder and in residuum refer to the testator's three children Clarence M. Jones, Ellis Oliver Jones and Laura E. Jones. The testator had a fourth child, Raymond V. Jones, and the only bequest that was made to Raymond V. Jones is under Item 7, which is as follows:

"Seventh: It is my will and I so direct that my son Raymond V. Jones, shall receive from my estate, from the date of his majority, provided I die before he reaches his majority, and if not, then from the date of my death, until he reaches the age of twenty six (26) years the sum of six hundred ($600.00) dollars per annum, the same to be paid to him in monthly installments of Fifty ($50.00) dollars each; and when my son Raymond shall reach the age of twenty six (26) years, it is my will, and I

so direct that he be paid, as soon after he reaches the age of twenty-six (26) as my executors may find it convenient, the sum of five thousand ($5,000.00) dollars. And it is my will and I so direct, that from the age of twenty six (26) years, until the time said Raymond reaches the age of twenty eight (28) years, he shall receive the sum of eight hundred ($800.00) dollars per annum, to be paid to him by my executors in equal monthly installments; and when he shall reach the age of twenty eight (28) years, it is my will and I so direct that he shall be paid the sum of five thousand ($5000.00) dollars in cash; and from the age of twenty-eight (28) years until the time said son Raymond reaches the age of thirty (30) years, he shall be paid the sum of one thousand ($1000.00) dollars per annum, the same to be paid to him in equal monthly installments by my said executors. And from the age of thirty (30) until my said son shall reach the age of thirty three (33) years, he shall receive the sum of twelve hundred ($1200.00) dollars per year, the same to be paid to him in equal monthly installments. And it is my will, and I so direct, that when my said son reaches the age of thirty three (33) years or as soon thereafter as my executors find it convenient, that he shall be paid the sum of forty thousand ($40,000.00) dollars in cash, without interest, the same to be his forever."

Item 19 reads as follows:

"Nineteenth: Should my son Raymond die without issue, his share of my estate shall be divided equally between his brothers and sisters or their legal representatives, share and share alike."

Item 19, immediately preceding Item 20, becomes important as an aid in determining what the testator meant by the word "share" used in these two items. Counsel for plaintiff argue that the word "share" refers to property held in common and not to special devises such as Items 6, 7 and 8. If we should adopt this construction it would at once, as we view it, eliminate the real estate described in Item 9 and leave nothing but the residuum under Item 22.

Furthermore, since Raymond was given nothing except under Item 7, Item 19 would have to be declared null and void because there would be no property held in common upon which it could operate. We think the word "share" as used in 19 and 20 refers primarily to the bequests and devises made under Items 6, 7, 8 and 9, and also to include subsequent bequests as made

under 21 and 22. The specific gifts of a piano to Laura, under Item 3, and the family clock and the writing desk to Clarence, under Item 4, and the gold watch and gold headed cane under Item 5, can readily be distinguished from the other bequests and devises. These were special gifts as distinguished from specific bequests. Not intended in the nature of a share of the estate, but rather personal to the donee. They may be likened unto Christmas presents and birthday presents which are intended to carry sentimental value as distinguished from food, raiment and shelter, furnished by a parent unto a child under a legal duty. These matters are not material except as they afford the opportunity to distinguish the special legacies and bequests. Just as Item 19 in providing a disposition of Raymond's share, if he die without issue must necessarily and does refer to Item 7, just so Item 20 in its reference to "share" includes Items 6, 8 and 9 as well as the two items following: to-wit, 21 and 22. Items 6, 7 and 8 were gifts in money and totaled over $100,000.00.

"It has long been settled law in Ohio that limitations over of personal property, by way of executory bequest, are valid, and have like effect and operation as in the case of executory devises of realty."

Martin v Lapham, 38 Oh St, 538;

Briggs et v Hopkins, Exr, 103 Oh St, 321-327.

Under this situation no different construction should be given to these various items of the will by reason of the fact that 6, 7 and 8 are gifts of money, whereas under 9 there is a gift of real estate of the value of $60,000.00, and a further gift of money in the sum of $10,000.00.

We note the similarity in language between Item 19 and Item 20. It was necessary for the testator to express his intent in two items by reason of the fact that Raymond under no circumstances was to receive anything by way of executory devise. In the event that he died without issue his share was to be divided between his brothers and sisters or their legal representative, share and share alike. It will be noted that Raymond was to receive monthly payments until he arrived at thirty-three years of age, or the period of eight years following the death of the testator. After he arrived at thirty-three years he was to receive $40,000, "the same to be his forever" and being the major portion of his share. In the interim the

balance necessarily remained in the estate. The testator evidently desired to make provision for the disposition of this share in the event of the death of Raymond before it was paid to him. Surely the monthly payments of $50.00 up to $100.00 a month during this period of eight years would not be expected to be kept by Raymond so as to be available as an executory devise to his two brothers and one sister after he once received it. Such a construction might have involved an unsettled status of this fund for a half a century had he lived that long.

Counsel for plaintiff in error has urged very strongly that we are not construing Item 19, and of course this claim is correct. However, as we have heretofore indicated, we think it is an aid in arriving at the testamentary intent in Item 20.

Under Item 6, the legacy of $30,000.00 to Clarence Jones was payable to him within two years from the date of the death of the testator.

Under Item 8 the legacy to Ellis Oliver Jones of $20,000.00 was payable in two payments, $10,000.00 when he arrived at 24 years of age, and $10,000.00 when he arived at 26 years of age. Ellis O. was nearly 21 years of age at the time of his father's death.

Under Item 9 the bequest to Laura E. Jones of the real estate valued at $60,000.00 was to go to her when she arrived at 22 years of age. And likewise she was to receive $10,000.00 in cash when she arrived at 22 years of age. Laura E. Jones at the time of the death of her father was eighteen years of age. Here again were legacies and bequests, the payment of which might be delayed pending the arrival of the age designated. In the interim the property remained in the estate. We think it was the manifest intent of the testator to provide a disposition of these legacies and bequests in the event the legatee or devisee died before the time of distribution.

The case of Fetterman v Bingham, 115 Oh St, p. 35, and particularly the opinion, has many observations that are applicable to the instant case. We take the following from page 42:

"No bond, inventory, or appraisal was to be required."

Again on page 43,

"No accounting or inventory or appraisal or bond being required."

Also commencing at the bottom of page

45 and continuing on page 46,

"For the purpose of ascertaining the purpose of the testator, standing in his position when he made the will, we cannot believe that if his daughter survived him, as she has for many years, and should have 'no natural heirs,' he intended that in her old age her estate should be a life estate only. Such an intention is inconsistent with the evident natural love, affection, solicitude, and regard that he had for his daughter, as well as the confidence that the will discloses that he had in her."

In this case Judge Day cites with approval the case of Colby v Doty, 158 N. Y., 323, 325, (53 NE, 35). In the New York case the provision of the will as quoted is very similar to parts of the will in the instant case. In that case the bequest was to be paid to the daughter when she arrived at the age of 21 years, if she should then be living. A further clause in the will provided as follows:

"In the case of the death of my said daughter Electa without lawful issue of her own body living at the time of her death, then and in that case on her death so without child or children, I give, devise and bequeath the said property and estate hereby devised to my said daughter, as follows."

In that case it was held that the death of the daughter referred to was her death during minority, and that it was the intention of the testator to pass a fee to the daughter, subject to being divested by her death before attaining majority.

In passing, we think it proper to make the observation that while it is clearly announced by the Supreme Court of Ohio that executory devises may apply to personal property as well as real estate, yet there is a very apparent reason why we would expect a difference in testamentary language in dealing with these two different classes of property. In devising real estate in fee subject to be divested and pass an executory devise to another, the conditions at once attach to the real estate and continue so long as the contingency exists and no disposition of the real estate can be made by which the right of the testamentary devisee may be lost.

In a bequest of money which the legatee receives unrestricted it would at once appear to the testator and particularly his scrivener that unless some provision were made to hold the fund in trust, the probabilities would be that it would be difficult to locate or identify the property so as to make the money available as a testamentary devise.

These are conditions to take into consideration in construing the language of a will.

We now call attention to another reason why we think this will must be construed as giving a fee. simple title to Laura E. Jones at the date of the distribution.

A part of Item 9 reads as follows:

"I give, devise and bequeath to my daughter, Laura E. Jones, and to her heirs when she shall arrive at the age of twenty two (22) years; my two brick store buildings, known as 229 and 231 North High Street, Columbus, Ohio, the same being a perpetual leasehold, and which I value at the sum of sixty thousand ($60,000) dollars."

The part of this Item 9 to which we specially call attention are words of inheritance "to my daughter, Laura E. Jones, **and to her heirs.**" (Black face ours.)

Until the abolishment of the rule in Shelley's case, the same provisions were required in wills as in deeds in order to pass a fee simple title. Under the earlier rule the words, "and heirs" were words of inheritance necessary in order to create a fee simple. §10580 GC reads as follows:

"Every devise in a will of lands, tenements, or hereditaments, shall convey all the estate of the devisor therein, which he could lawfully devise, unless it clearly appears by the will that the devisor intended to convey a less estate."

In the case of Collins v Collins, 40 Oh St, 353, 364, we find the following:

"It is a rule of the courts, in construing written instruments, that when an interest is given or an estate conveyed in one clause of the instrument in clear and decisive terms, such interest or estate cannot be taken away or cut down by raising a doubt upon the extent and meaning and application of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate."

The question arises here whether or not we have two conflicting rules relative to language creating a fee simple estate and another clause creating a fee subject to be divested on the condition of dying without

issue. Attention should be called to the fact that in every instance in which the Supreme Court of Ohio has ruled that the words "die without issue" means death of the first taker at any time, are in cases where no words of inheritance follow the gift to the first taker. The case of **O'Malley v O'Malley, 20 Oh Ap, 207, (3 Abs 639; 23 OLR 408)**; extends the rule to cases where there are express words of inheritance in the gift to the first taker. It is also proper to give effect, if possible, to each and every word of the will if they aid in arriving at the intent of testator. This leads us to inquire as to why the testator used these words of inheritance in item nine.

Under §10580, GC, above quoted, all that was necessary to create a fee simple title was to use the words, "to my daughter, Laura E. Jones." Surely if he had intended the language used in 20 to be applicable whenever Laura E. Jones died, he certainly would not have added, following her name, "and to her heirs." Under a bequest to A, if nothing appear in the will showing a contrary intent, an absolute fee simple title passes by reason of statutory law. In short, this means that where the testator has failed to express an intent the law determines it for him. But where a testator devises his property to A and to her heirs, he is thereby expressing an intent that he desires the devisee to have a fee simple title. The words, "and to her heirs" are words of inheritance and the testator is presumed to use them in accordance with their legal significance.

Also, when we examine the last paragraph of this Item 9 we find that the testator in his bequest to Laura E. Jones gives her $10,000.00 in cash to be invested by her in improved real estate, "for her sole use and benefit forever." No more positive language could possibly be used for an intent that Laura should hold absolutely this $10,000.00 and its investments. Certainly it should not be cut down to a divisible estate under Item 20 of the will.

Under Item 21 of the will, which provides for $60,000.00 of property going to the three children after the death of their mother, the last paragraph of this will reads as follows:

"And at the death of my wife, it is my will and I so direct, that what remains of said money and property so given her as aforesaid herein, shall be divided between my children, Clarence M. Jones, Ellis Oliver Jones and Laura E. Jones, **and their heirs** forever, **share and share alike.**" (Black face ours).

The first part of this Item 21 is interesting because therein he provides that the distribution of the estate is to be made when his daughter Laura arrived at the age of 22 years. This positive, express language creating a fee simple interest cannot be cut down by other disconnected provision of the will. We again call attention to the case of **Fetterman v Bingham, 115 Oh St, at page 44:**

"Further, the testator having created an absolute fee-simple title in his daughter, Electa A. Bingham, subject to the conditions named therein, we fail to find language subsequently used in the will showing an intention to cut down this fee-simple title to a life estate. To do so we think would be a violation of a very old and well-established rule of the law of wills, to-wit, that where by clear and unequivocal terms an estate in fee simple is given in one item of a will, the same cannot be cut down to a life estate by implication only, less clear than the intention to create the fee simple previously created."

The observation that we have thus far made in discussing Item 9 of the will applies with all its force to this Item 21.

In Item 22 we find a different situation, in that words of inheritance are not used by the testator and therefore there is not present as in the other clause the expressed intent to create the fee and absolute title in the three children named. This item deals with the residuum, and gives to each of his children, Clarence M. Jones, Ellis Oliver Jones and Laura E. Jones, respective shares. Whether it deals with personal property or real estate under the provisions of §10580, GC, it would give an absolute estate unless cut down by the provisions of Item 20. If by any construction we conclude that it was the intent of the testator that Item 20 should apply only to Item 22, then we think that under the rule of judicial construction that each of the heirs would only receive a divisible fee in the remainder and subject to be divested on death without issue at any time. We have heretofore stated and now repeat, with all the positiveness at our command, that Item 20 refers primarily to Items 6, 8 and 9. Items 21 and 22 are included because of the fact that Item 20 is sufficiently comprehensive to include them. In construing Item 20 relative to Items 6, 8, 9 and

21, we have pointed out that in order to give application to all of the provisions of the will it is necessary to construe the words "die without issue" in Item 20 as meaning die without issue before the time of distribution or before Laura arrived at 22 years of age. The residuum in Item 22 so far as time of distribution is concerned is necessarily referable to the provisions of Item 21, to-wit, when Laura arrived at the age of 22.

We know of no rule of construction that would permit our saying that Item 20 had one meaning when it applies to Items 6, 8, 9 and 21, and a different meaning when it applies to 22.

We might make one further observation in which attention is called to the exact language of Items 19 and 20.

Under Item 19 the testator says:

"Should my son Raymond die without issue, **his share of my estate** shall be divided equally between his brothers and sisters or their legal representatives share and share alike." (The black face is ours).

Under a strict grammatical construction the words "his share of my estate" would mean the interest coming to him and not the interest that he had received. After he had received it, it is no longer in the estate. The words "shall be divided" are evidently a direction for distribution should Raymond die before he receives his share.

Attention is also called to the language of Item 20th:

"Should either of my said sons, Clarence or Ellis Oliver or my daughter die without issue the share of one dieing shall go to the others share and share alike or their heirs."

This item differs from 19 in that the testator merely refers to share and not share of my estate as in Item 19. We think the words "of my estate" are necessarily implied by reason of the fact that the two items must have similar construction.

The words, "shall go" are a direction for distribution in the event of the death of either before they have received their interest. Under strict grammatical constructions the words "shall go" would not refer to something that had gone.

In the case of **Baker v McCrew, 41 Oh St, 113**, a very similar question arose as to the construction of a will and the Supreme Court in that case held that under the language used the words "die without issue" was a contingency contemplated to occur prior to the distribution of the estate. The pertinent language of the will is as follows:

"In case of the death * * * without issue * * * then the * * * share coming to them * : * shall be given * * *."

Judge Nash rendering the opinion of the court states at page 118:

"The use of the words 'shall be given' are very significant. In the first instance Mrs. Hertzler devised, gave and bequeathed one sixth of the remainder of her estate to Catherine and Daniel Baker. Upon the death of the testatrix it was the duty of the testator to place the devisees, if of full age, in possession of the property, otherwise to hand it over to their guardian. The words 'shall be given' were evidently intended as a direction to the executor as to what to do, in case this could not be done. This contingency could not happen if the grandchildren survived the testatrix. It could only happen in case all the children of one or more of the daughters died before the death of Mrs. Hertzler.

"Giving the words of her will their ordinary and natural meaning, we conclude that the contingency contemplated could only arise in case the devisees should die prior to testatrix's death."

We are aware of the fact that in many wills construed by our Supreme Court containing similar language no reference has been made to a strict grammatical construction. In many of the cases the general rule has been followed that the words "die without issue" means die at any time. However, where such constructions have been made, a strict grammatical construction would not modify the apparent intent or the general rule.

It is probably true that this is a very slight circumstance, but yet we think it is the natural language for the testator to use having the intent as we find it.

We think that the rulings of the trial court were correct and we find no error in the proceedings of the court below. The judgment will be affirmed. Exceptions will be allowed. Entry may be drawn in accordance with this opinion.

HORNBECK, PJ, concurs.
KUNKLE, J, not concurring.